UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY M. and KRISTINE M.; and KATHY M., Individually and as Next Friend of KERRY M. and KRISTINE M., <br><br> Plaintiffs, <br><br> v. <br><br> MANHATTAN SCHOOL DIST. #114; BOARD OF EDUCATION OF MANHATTAN SCHOOL DIST. #114; GLENN HOFFMAN, in his Official Capacity as Superintendent; and the ILLINOIS STATE BOARD OF EDUCATION, <br><br> Defendants. | Case No. 03 C 9349 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Kerry and Kristine M. ("Plaintiffs") bring this action against the Manhattan School District, #114 ("District"), Board of Education of Manhattan School District #114 ("Board"), Glenn Hoffman, in his official capacity, and Illinois State Board of Education ("ISBE"). Plaintiffs are twin girls who both have Rett Syndrome and require special education pursuant to the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs complain that their Individualized Education Programs ("IEPs") do not provide a free and appropriate public education ("FAPE") in the least restrictive environment ("LRE") as required by the IDEA.

This action is an appeal of an administrative ruling rendered by an Impartial Hearing Officer ("IHO"). The IHO found that Plaintiffs were provided a FAPE in the LRE. Plaintiffs allege that this ruling violates the IDEA, 20 U.S.C. § 1400 *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. The parties have cross-moved for summary judgment.

Because the IHO did not commit any errors of law or clearly err in finding that Kerry M. and Kristine M. were provided a free and appropriate public education in the least restrictive environment by the District, the District is entitled to judgment as a matter of law. Additionally, even if the ISBE failed to educate and monitor properly other IHOs or other districts, Plaintiffs have not suffered any injury as a result because the IHO and the District in this case adequately enforced the IDEA's FAPE and LRE mandates. Finally, Plaintiffs' ADA and Rehabilitation Act claims based upon the denial of a free and appropriate public education are dismissed for the same reasons.

**Background**

Plaintiffs Kerry M. and Kristine M. were students of Manhattan School District No. 114. (Defendants' Rule 56.1 Statement of Material Facts ("Defs. SOF") ¶ 1.) Kathy M. is their mother. (*Id.*) Manhattan School District No. 114 is an elementary (K-8th grade) school district located in Will County, Illinois. (Defs. SOF ¶ 2.) The Illinois State Board of Education is the state agency responsible for the educational polices and guidelines in public schools in Illinois, including implementation of the IDEA. (Defs. SOF ¶ 3.)

Kerry and Kristine M. are twin girls who have Rett Syndrome. (Defs. SOF ¶ 14.) Dr. Sukkubai Naidu, who followed Kerry and Kristine through a research study, summarized Rett Syndrome as follows:

> A neuro-developmental disorder associated with a devastating loss of function in childhood. It is manifested by psychomotor retardation, deceleration of head growth, stereotyped hand movements with loss of purposeful hand use, lack of expressive language skills with poor communication intent, seizures, irregular respirations, vasomotor instability and gastrointestinal problems including failure to thrive, reflux and constipation.

(Defs. SOF ¶ 17.) The severity of the symptoms associated with Rett Syndrome, including the level

of physical and cognitive impairment, vary from child to child. (Defs. SOF ¶ 19.) Kerry and Kristine, in particular, suffer from physical impairments including seizures, apnea, poor peripheral circulation, hypoglycemia, nosebleeds and allergies. (Defs. SOF ¶¶ 20-21.) They are more severely disabled physically than some other girls with Rett Syndrome. (Defs. SOF ¶¶ 22, 24.) While some girls with Rett Syndrome can walk and function at an 18-month level, Kerry and Kristine are non-ambulatory, and their gross motor skills are in the 6-month range of functioning. (Defs. SOF ¶ 25.) Kerry and Kristine received scores that were the cognitive-functioning age equivalent of less than 1 year 9 months. (Defs. SOF ¶ 38.) At times, Kerry and Kristine exhibit seizure-like activity, ranging from staring or absence seizures to harder or grand mal-type seizures. (Defs. SOF ¶ 44.) Kristine suffers more frequent and harder seizures than Kerry. (Defs. SOF ¶ 45.)

Since 1993, when the girls were three years old, the District arranged for them to be educated at United Cerebral Palsy ("UCP"), a private day school in Joliet, Illinois. (Defs. SOF ¶ 106.) UCP serves students between the ages of 3 and 21, and the students are placed with age-appropriate peers in one of UCP's six classrooms. (Defs. SOF ¶ 109.) UCP employs certified education instructors and contracts with physical, occupational, music, speech and language therapists, and a feeding specialist. (Defs. SOF ¶ 114.) UCP classrooms have carpeted areas, mats, and physical therapy equipment, in additional to instructional materials, augmentative communication devices and computers. (Defs. SOF ¶ 116.) UCP also has what is called a "gross motor room" for physical and occupational therapy services, a speech and language therapy room, a gymnasium, and a respite room. (Defs. SOF ¶ 117.) Additionally, there is an internal emergency response system known as "Mr. Team," and emergency ("911") crews are within five minutes of the school. (Defs. SOF ¶ 124.) In the classroom, Kerry and Kristine had access to augmentative communication devices, including

3

a dual output VOCA switch and a Step-by-Step communication device. (Defs. SOF ¶¶ 148-49.)

At issue in the IDEA administrative hearing was Kerry's and Kristine's education during the 2000-01, 2001-02 and 2002-03 school years. During the 2000-2003 school years, Kerry's and Kristine's IEP required multiple individualized one-on-one therapy sessions. (Defs. SOF ¶ 174.) Kerry and Kristine received two one-on-one half-hour sessions of speech therapy per week (Defs. SOF ¶ 175); a half-hour of physical therapy (Defs. SOF ¶ 199); a half-hour of occupational therapy (Defs. SOF ¶ 207); and a half-hour of musical therapy (Defs. SOF ¶ 214). At the time of the due process hearing, Vicki Rickel had been the home room teacher for Kerry and Kristine for three years. (Defs. SOF ¶ 138.) Ms. Rickel had four classroom aides to assist her. (Defs. SOF ¶ 141.) The UCP staff testified that they made efforts to better understand Rett Syndrome. (Defs. SOF ¶¶ 128-36.)

Each year the IEP team for Kerry and Kristine conducted an annual review of their progress under their IEP and proposed an IEP for the upcoming year. (Defs. SOF ¶¶ 221, 251, 286.) Kathy M. and their teacher, Ms. Rickel, attended the reviews. (Defs. SOF ¶¶ 226, 228, 252, 288-89.) As part of the review process, the IEP team reviewed the possibilities for and appropriateness of Kerry's and Kristine's placement in a regular education classroom. (Defs. SOF ¶¶ 234-37, 246-47, 258-62, 300-01, 353-61, 426.)

At the administrative hearing, Plaintiffs offered evaluations from five consultants. Plaintiffs' consultants criticized the excessive downtime in Kerry's and Kristine's schedules (Plfs. SOF ¶¶ 204-27); the lack of opportunities for communication (Plfs. SOF ¶¶ 236-273); the inappropriate use of assistive technology such as the Voice Output Communication Aids ("VOCA") devices, Step-by-Steps and eye gaze boards (Plfs. SOF ¶¶ 287-345); that Kerry and Kristine were not systemically instructed (Plfs. SOF ¶¶ 346-53); that literacy was not taught effectively (Plfs. SOF ¶¶ 354-95); and

4

that the goal and therapy time was insufficient (Plfs. SOF ¶¶ 396-450). Plaintiffs also argue that the UCP staff did not have the training or experience to be working appropriately with Kerry and Kristine. (Plfs. SOF ¶¶ 212, 227, 236-395, 528-548.) Dr. Swisher opined that it was medically safe to send Kerry and Kristine to a regular educational facility. (Plfs. SOF ¶¶ 40-89.) Dr. Owen testified from an educational or instructive perspective why Kerry and Kristine were capable of being educated in a regular classroom. (Plfs. SOF ¶¶ 21-39.)

The due process hearing commenced on May 13, 2003 and continued from: May 13-16, May 19-20, June 26-27, and June 30-July 3. Kathy M. complained that her daughters had been denied a FAPE because UCP failed to adequately train its staff, implement their IEP, provide curriculum on a full day basis, provide assistive technology appropriately, educate the twins in the LRE and did not pay for the twins' wheelchairs. After hearing numerous days of testimony and evaluations, the IHO found that "[b]ased on the preponderance of the evidence . . . Kerry M. and Kristine M. were provided a free and appropriate education in the least restrictive environment for the school years 2000-2001, 2001-2002, 2002-2003 by the Manhattan Elementary School District #144."

**Standard of Review**

The summary judgment analysis under the IDEA differs from the familiar "no genuine issue as to any material fact" standard in Fed. R. Civ. P. 56(c). The IDEA requires that a district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). When neither party presents new evidence "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Hunger v. Leininger*,

5

15 F.3d 664, 669 (7th Cir. 1994). Plaintiffs, as the party challenging the outcome of the state administrative decision, bear the burden of proving their claims by a preponderance of the evidence. *See Patricia P. v. Board of Educ. of Oak Park*, 203 F.3d 462, 467 (7th Cir. 2000).

This Court reviews a hearing officer's application of the law de novo. *See Alex R. v. Forrestville Valley Community Unit School Dist. #221*, 375 F.3d 603, 612 (7th Cir. 2004). This Court independently evaluates the testimony of witnesses and evidence in the administrative record, but gives "due weight" to the administrative proceedings and the hearing officer's decisions. *See Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *Heather S. v. State of Wis.*, 125 F.3d 1045, 1053 (7th Cir. 1997). How much weight is due weight depends on the amount of new evidence that is presented to the district court. *See School Dist. of Wisconsin Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 675 (7th Cir. 2002). Because this Court accepted no new evidence, it may set aside the IHO's decision only if it is "strongly convinced that the order is erroneous."[1] *Z.S.*, 295 F.3d at 675.

## DISCUSSION

Plaintiffs' claim for compensatory education precludes this controversy from becoming moot. Regarding the merits of Plaintiffs' case, the IHO properly placed the burden of proof upon Plaintiffs at the administrative hearing. The IHO also applied the correct LRE standard and rightly afforded due weight to the decisions and expertise of school officials in determining that Kerry's and

---

[1] This deference has been characterized as "just another way of stating the clear-error or substantial-evidence standard." *Z.S.*, 295 F.3d at 675; *see Alex R.*, 375 F.3d at 612 ("This level of review is akin to the standards of clear error or substantial evidence"); *but see Rowley*, 458 U.S. at 205 ("Congress expressly rejected provisions that would have so severely restricted the role of reviewing courts . . . In substituting the current language of the statute for language that would have made state administrative findings conclusive if supported by substantial evidence").

Kristine's IEP was reasonably calculated to provide them with an appropriate education in the least restrictive environment. Last, the IHO justly denied Plaintiffs' request for reimbursement for the cost of wheelchairs because Plaintiffs failed to prove that the wheelchairs were necessary only to allow them to attend school or receive education.

**I.      Mootness**

Article III of the United States Constitution grants a federal court jurisdiction to resolve actual cases and controversies. U.S. Const. Art. III, § 2. A case or controversy will become moot if a plaintiff no longer has an injury that could be redressed by a favorable decision. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990); *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990) (defining the issue as "whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)"). A moot case is non-justiciable and must be dismissed. *See Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000).

Kerry and Kristine graduated from eighth grade at Manhattan Junior High School and now attend Lincoln-way High School. (Defs. SOF ¶ 1.) Manhattan and Lincoln-way are in different school districts. (Defs. SOF ¶¶ 1-2.) A favorable decision in this Court will have no legal effect on the high school district's IEPs for Kerry and Kristine. Thus, what remedy can this Court provide Plaintiffs since Kerry's and Kristine's current IEP is now in the hands of the high school district? Plaintiffs argue that their equitable claim for compensatory education would afford them redress and keeps their case from becoming moot.

The IDEA authorizes a district court to award aggrieved parents "such relief as the court determines is appropriate." 20 U.S.C. § 1415(h)(2)(B). "Such relief" includes compensatory

7

education. *See Bd. Educ. Oak Park & River Forest High Sch. Dist. 200 v. Todd A.*, 79 F.3d 654, 657 (7th Cir. 1996) ("[T]his authorization encompasses the full range of equitable remedies and therefore empowers a court to order adult compensatory education if necessary to cure a violation"); *Evanston Community Consolidated School Dist. Number 65 v. Michael M.*, 356 F.3d 798, 803 (7th Cir. 2004) (same). Compensatory education extends the IDEA's benefits beyond the age of 21 when a child has been denied an appropriate education, or provided one but not in the least restrictive environment, during the years before turning 21. *Todd A.*, 79 F.3d at 660; *see Mostow v. Hinsdale Tp. High School Dist.*, 2006 WL 2505798, *1 (N.D. Ill. 2006) (plaintiff asserted that child was entitled to compensatory education beyond his twenty-first birthday); *Kevin T. v. Elmhurst Community School Dist. No. 205*, 2002 WL 433061, *2 (N.D. Ill. 2002) (plaintiffs sought a free education until child turns twenty-one, one additional year of compensatory education).

Plaintiffs' circumstances are virtually identical to the facts in *Bd. of Educ. of Downers Grove Grade School Dist. No. 58 v. Steven L.*, 89 F.3d 464 (7th Cir. 1996). Andrew L., the minor child, had graduated from eighth grade and was ready to begin high school with a different school district. *Id.* at 467. Andrew's parents already had agreed to a new IEP with his new high school district. *Id.* The Court held that because it could grant no remedy that would effect Andrew's fifth grade IEP, the subject of the controversy, the case was moot. *Id.* Andrew's parents, however, did not seek compensatory education.

The present action involves Kerry's and Kristine's junior high educational needs. Their mother, Kathy M., has entered into a placement agreement with the high school district where they currently attend. While these facts would seem to preclude any meaningful redress, the Supreme Court's broad reading of § 1415(h)(2)(B) provides this Court with a full range of equitable remedies

by which to fashion relief. *See School Comm. of Burlington v. Department of Ed. of Mass.*, 471 U.S. 359, 369-70 (1985). Given the broad equitable powers granted this Court, Plaintiffs' request for compensatory education keeps this case alive and the Court will address the merits of Plaintiffs' claims. *See Brown v. Bartholomew Consol. School Corp.*, 442 F.3d 588, 597-98 (7th Cir. 2006).

## II.     Burden of Proof at Due Process Hearing

Plaintiffs contend that the IHO wrongly placed the burden on them to prove that Kerry and Kristine at the due process hearing. Plaintiffs requested the due process hearing in order to challenge the IEP for Kerry and Kristine. "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 126 S.Ct. 528, 537 (2005); *see Brown v. Bartholomew Consol. School Corp.*, 442 F.3d 588, 594 (7th Cir. 2006) ("The Supreme Court recently has clarified that, under the IDEA, the student and the student's parents bear the burden of proof in an administrative hearing challenging a school district's IEP"). The Supreme Court, however, left open the possibility that "[s]tates may, if they wish, override the default rule and put the burden always on the school district." *Id.*

The IDEA framework in Illinois provides that "[t]he school district shall present evidence that the special education needs of the child have been appropriately identified and that the special education program and related services proposed to meet the needs of the child are adequate, appropriate and available." 105 ILCS 5/14-8.02(h). Section 8.02(h) states only a district's obligation to present evidence, it does not place a burden of proof on the district. *See Schaffer*, 126 S.Ct. at 533-34 (distinguishing burden of production from burden of persuasion) As such, § 8.02(h) does not contain the explicit burden of proof language necessary to override the default rule that Plaintiffs, as the party challenging the IEP, bore the burden of proof. *See, e.g.,* Minnesota Statutes

9

Section 125A.091, Subdivision 16 ("The *burden of proof* at a due process hearing is on the district to demonstrate, by a preponderance of the evidence, that it is complying with the law and offered or provided a free appropriate public education to the child in the least restrictive environment"); Alabama Administrative Code § 290-8-9-.08(8)(c)(6)(i)(1) (a school district must "assume the *burden of proof* regarding the appropriateness of services proposed or provided"); D.C. Mun. Reg. § 3022.16 ("DCPS bears the *burden of proof*, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the education needs of the student") (all emphasis added).

### III. The Individuals with Disabilities Education Act

#### A. Free and *Appropriate* Public Education

The IDEA entitles a disabled child to a free and appropriate public education. 20 U.S.C. § 1412(a)(1). An appropriate education is one "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 188-89 (1982); *see* 20 U.S.C. § 1400(d) (the IDEA's purpose is "to ensure that all children with disabilities have available to them appropriate public education that emphasizes special education and related services designed to meet their unique needs"). To effectuate its purpose, the IDEA requires a conference between the child's parents, school administrators and the child's teachers to create and maintain an individualized education plan ("IEP") for the disabled student. *See* 20 U.S.C. §§ 1401(11), 1414(d). The IEP identifies a child's goals and how to help the child to advance towards them. *Id.* If a parent believes that her child is being denied an appropriate education, she may initiate a due process hearing before an independent hearing officer. 20 U.S.C. § 1415(f). If the

parent cannot obtain the desired relief through the administrative proceeding, she may then file a civil action in federal or state court. 20 U.S.C. § 1415(i)(2)(A).

In deciding whether a child's IEP is formulated and implemented in a manner that provides a FAPE, a court asks two questions: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley*, 458 U.S. at 207. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id.* Plaintiffs do not dispute that Defendants complied with the procedures set forth in the IDEA. Plaintiffs argue, however, that Kerry's and Kristine's IEP was not reasonably calculated to provide them an educational benefit. Regarding this second step of the *Rowley* test, the IHO concluded:

> [T]he school district did meet it[s] obligation for developing an IEP for Kerry M. and Kristine M. that would be reasonably calculated to enable "the twins" to receive educational benefits. In support of this finding, the review of "the twins" IEP demonstrated they had made educational gains as reported by annual reviews, quarterly progress reports, daily classroom charting, goal performance chart[s], and the results of the tri-annual evaluations. These gains were the result of the school district providing appropriate educational programs at the UCP private day school based on reasonable goals and objectives for "the twins."

(September 5, 2003 Decision and Order of Independent Hearing Officer ("IHO Decision") at 35.)

A parent has the right to an "independent educational evaluation of the child" at public expense. *Id.*; *see* 34 CFR § 300.502(b)(1) (a "parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency"). This independent evaluation ensures that the parents "are not left to challenge the

11

government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." *Schaffer*, 126 S.Ct. at 536; *see Burlington*, 471 U.S. at 368. Plaintiffs argue that the IHO completely disregarded the testimony of their medical and educational consultants and unduly deferred to school administrators in determining that Kerry and Kristine received an educational benefit from their IEP. To begin, the IHO considered and discussed the evaluations and recommendations from Plaintiffs' consultants in reaching his decision. (IHO Decision at 20-23.) Further, the IHO did not clearly err in the weight he assigned their opinions because: (1) the school district is required to provide an appropriate education, not the best possible education and (2) where a child is being provided an appropriate education, the IHO must defer to the decisions of school administrators unless the decisions are unreasonable. *See Board of Educ. of Community Consol. School Dist. No. 21, Cook County, Ill. v. Illinois State Bd. of Educ.*, 938 F.2d 712, 715 (7th Cir. 1991); *Z.S.*, 295 F.3d at 676.

This Court has independently evaluated the copious testimony and evidence in the record. The objective measures show that Kerry and Kristine received an educational benefit from their time at UCP. *See Alex R.*, 375 F.3d at 615 ("The requisite degree of reasonable, likely progress varies, depending on the student's abilities"). Records made in Kerry's and Kristine's IEP, student progress reports, goal performance charts and therapy summary reports show that they made progress toward their cognitive, social, self-help, occupational therapy and speech therapy goals and objectives during each school year between 2000 and 2003. (Defs. SOF ¶¶ 254-55, 290-91, 339-40, 174-220) For example, Kerry and Kristine met or exceeded almost all of their 2001-2002 performance goals. *See Alex R.*, 375 F.3d at 615 ("Objective factors, such as regular advancement from grade to grade, and achievement of passing grades, usually show satisfactory progress"). To be precise, the exact

question is not whether Kerry and Kristine achieved an educational benefit, but whether their IEP was reasonably calculated to enable them to receive educational benefits. *See Rowley*, 458 U.S. at 207. Given the effort of school officials to create, update and implement the IEP based on the progress and goals of Kerry and Kristine, the IHO did not commit clear error in determining that Kerry and Kristine received an appropriate education. *See id.* at 203 ("[A]cademic progress, when considered with the special services and professional consideration accorded by the . . . school administrators, to be dispositive").

The District met its obligation to consider the results of independent evaluations submitted by Plaintiffs' consultants. *See* 20 C.F.R. § 300.502(c); *Kevin T. v. Elmhurst Community School Dist. No., 205*, 2002 WL 433061, *12 (N.D. Ill. 2002) (reversing IHO when District did not consider opinions of independent evaluators). Kerry's and Kristine's IEP team met on May 6, 2003 to review the findings and reports of the parent's independent evaluators. (IHO Decision at p. 29.) Having considered the evaluations, the IEP team had discretion to decide whether or not to include the recommendations from the parent or outside evaluators in the IEP. *See Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 297 (7th Cir. 1988) (educators "have the power to provide handicapped children with an education they consider more appropriate than that proposed by the parents"). Once a district is providing a disabled child with an appropriate education, it is under no IDEA duty to promote better practices or maximize the child's educational experience. *See Wise v. Ohio Department of Education*, 80 F.3d 177, 185 (6th Cir.1996) ("Whatever its virtue as social policy, IDEA only requires states to provide children with disabilities an appropriate education, not the very best possible special education services").

The IHO did not err as a matter of law or fact in giving due weight and deference to the

school authorities' reasonable decisions regarding the education of Kerry and Kristine. IHOs "are specialists and are not required to accept supinely whatever school officials testify to . . . But they have to give that testimony due weight." *Z.S.*, 295 F.3d at 676. The IHO concluded that "[t]here was very little research alluded to during the course of the hearing; however, there was considerable information shared by the parents' consultants that he hearing officer would characterize as 'best practices' and/or philosophically bias." (IHO Decision at 34.) Plaintiffs bore the burden of proving that school officials were unreasonable in the creation or implementation of Kerry's and Kristine's IEP. *See Patricia P.*, 203 F.3d at 467. After receiving competing testimony regarding the most appropriate techniques, the IHO found, in the absence of definitive research, he would rely on the school district's expertise. (IHO Decision at 34.) This is not to say that the techniques and recommendations of Plaintiffs' consultants were not the best approach. But judges do not work with stethoscopes or chalkboards. Our skills lie in interpreting the law and applying the law to facts. The Court's task is to decide only whether Plaintiffs received an appropriate education, not the best possible education; and, without evidence that the school administrators' decisions are unreasonable, the Court may not "substitute [its] own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206. After independently evaluating the evidence and the IHO's decision, the IHO did not commit any errors of law and did not commit clear error in finding that Kerry's and Kristine's IEP was reasonably calculated to confer an educational benefit.

**B.**     **Least Restrictive Environment**

The IDEA requires the IEP not only to confer some educational benefit, but to do so in the least restrictive environment. *See Beth B. v. Mark Van Clay*, 282 F.3d 493, 496 (7th Cir. 2002). The LRE is one that allows the disabled child to be educated with her nondisabled peers, known as

mainstreaming, to the greatest extent appropriate. *Id.* at 498. "The LRE requirement shows Congress's strong preference in favor of mainstreaming, but does not require, or even suggest, doing so when the regular classroom setting provides an unsatisfactory education." *Id.* at 497; *see Rowley*, 458 U.S. at 197 n. 21 ("The Act's use of the word 'appropriate' thus seems to reflect Congress' recognition that some settings simply are not suitable environments for the participation of some handicapped children"). A disabled child may be removed from the regular classroom when "the nature or severity of the disability . . . is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5). Plaintiffs charge that the IHO violated the LRE mandate of the IDEA by applying the wrong legal standard and failing to assess whether Kerry and Kristine could have been educated in a regular education classroom or in a placement that had reverse mainstreaming opportunities and time with non-disabled peers in nonacademic settings.

The IHO applied the right legal standard – he examined Kerry's and Kristine's placement with an eye towards mainstreaming them to the maximum extent appropriate in light of the nature or severity of their disability and the availability of supplementary aids and services.[2] (IHO Decision at 30, 31, 34.) Plaintiffs nevertheless quibble with the IHO's statement that "[i]n the absence of a legal standard regarding LRE, the hearing officer is relying on the school district's expertise." (IHO Decision at 34 (citations and text omitted).) First, it is true that the Seventh Circuit has not established a legal standard regarding LRE – "[w]e find it unnecessary at this point in time to adopt a formal test for district courts uniformly to apply when deciding LRE cases. The Act itself provides

---

[2] "The main LRE issues concerning Kerry M. and Kristine M. deal with (1) being educated with nondisabled children to the maximum extent appropriate and, (2) removal from the regular education environment and classroom because of severity of disabilities." (IHO Decision at 34.)

enough of a framework for our discussion." *Beth B.*, 282 F.3d at 499. The IHO applied the framework from the Act. Plaintiffs, on the other hand, offer argument and evidence that Kerry and Kristine "could" or "can" be educated in a regular public school. But the IDEA requires mainstreaming to the maximum extent *appropriate* not the maximum extent *possible*. *See Heather S. ex rel. Mark S. v. Niles Tp. High School Dist. No. 219*, 1999 WL 1100931, *6 (N.D. Ill. 1999), aff'd *Heather S. v. State of Wis.*, 125 F.3d 1045 (7th Cir. 1997).

The IEP meeting notes state that: "[t]he school team did not feel [the girls'] needs would be appropriately met in a regular education building. [Their] needs are excessive as [they] require continual therapies, nursing assistance, feeding assistance, and academic assistance. School team felt these needs are better met in an alternative placement where therapy and academic assistance is an integral part of the school day." (Defs. SOF ¶ 295.) Evidence presented at the due process hearing involved Kerry's and Kristine's physical impairment, including apraxia, gross motor skills at a 6 month level and being non-ambulatory (Defs. SOF ¶¶ 25-35, 170-73, 199-206); their cognitive functioning level and communication development needs (Defs. SOF ¶¶ 36-43, 186-98, 266-78, 379-86); therapy needs (Defs. SOF ¶¶ 171, 174-220); medical issues such as seizures (Defs. SOF ¶¶44-86, 99-104); feeding needs (Defs. SOF ¶¶ 73-80, 159-64); and toileting/diapering needs (Defs. SOF ¶¶ 155, 167, 169, 407-10). The District then presented testimony that Kerry and Kristine received little or no educational benefit from their participation in mainstream activities. (Defs. SOF ¶¶ 260, 318-38.)

Although other students with Rett Syndrome may receive reverse mainstreaming opportunities, as well as time spent with nondisabled peers in nonacademic classes, "[e]ach student's educational situation is unique." *Beth B.*, 282 F.3d at 499 (special education classroom located in

same building with regular education classrooms). In this case, UCP is separate from the regular school facilities. (Defs. SOF ¶ 106.) The IEP team felt that the time spent attending integrated classes would be of limited or no value and result in the loss of valuable instruction time at UCP. (Defs. SOF ¶¶ 295, 301-02.) The IHO did not clearly err in finding that the school authorities' decision that Kerry and Kristine could not be satisfactorily educated in a regular classroom was not unreasonable.

### C. Claims against the ISBE

Plaintiffs bring two IDEA claims against the ISBE. The first asserts that the ISBE allegedly failure to ensure that the District enforced the LRE mandate. Whether or not the State has failed to educate and monitor properly other IHOs or other districts, Plaintiffs have not suffered any injury as a result because the IHO and the District in this case adequately followed the IDEA's FAPE and LRE mandates. *See Board of Educ. of Tp. High School Dist. No. 211 v. Michael R.*, 2005 WL 2008919, *25 (N.D. Ill. 2005) (dismissing claims against ISBE for failure to ensure that the school district complied with the LRE mandate of the IDEA where school district was found in compliance with LRE mandate). Plaintiffs fail to sufficiently develop their second claim regarding the ISBE's alleged use of a funding formula that violates the IDEA. Plaintiffs cite only one unsubstantiated, unexplained statement that, indeed, a biased funding formula is used – the argument is waived. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 (7th Cir.2005) (failure to develop argument constitutes waiver).

## IV. Americans with Disabilities Act and Rehabilitation Act

Plaintiffs allege that their exclusion from regular classroom facilities constitutes unlawful discrimination in violation of the ADA and Rehabilitation Act. Title II of the ADA provides that

17

"no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). The Rehabilitation Act similarly prohibits discrimination against a qualified individual with a disability in the operations of a school system. 29 U.S.C. § 794(a) and 794(b)(1)(B). "In view of the similarities between the relevant provisions of the ADA and the Rehabilitation Act and their implementing regulations, courts construe and apply them in a consistent manner." *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

The IDEA provides that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l). The IDEA's regulations and the regulations implementing the ADA and Rehabilitation Act education provisions are substantially similar. *See, e.g.,* 34 C.F.R. § 104.34(a) (Rehabilitation Act regulation requiring qualified individuals to be educated with nondisabled individuals "to the maximum extent appropriate to the needs of the handicapped person"). Because of this similarity, Plaintiffs' ADA and Rehabilitation Act claims based on the denial of a free and appropriate public education are dismissed for the same reasons as their IDEA claim. *See N.L. ex rel. Mrs. C. v. Knox County Schools*, 315 F.3d 688, 695-96 (6th Cir. 2003) ("[P]recedent has firmly established that section 504 claims are dismissed when IDEA claims brought on the theory of a denial of free appropriate public education are also dismissed"); *Tarah P. v. Bd. of Educ. of Fremont Sch. Dist. 79*, 1995 WL 66283, *4 (N.D. Ill. 1995) (summarily dismissing ADA and Rehabilitation Act claims upon summary judgment against IDEA FAPE claim).

## V. Cost of Medical Equipment

Kathy M. testified that she purchased wheelchairs and Convaid Cruisers for Kerry and Kristine. (Plfs. SOF ¶ 601.) A Convaid Cruiser is a collapsible wheelchair that will fit in the trunk of a car. (Plfs. SOF ¶ 602.) The District would not transport Kerry and Kristine in their Cruisers to and from school. (Plfs. SOF ¶ 590.) Insurance will cover only one form of mobilization for Kerry and Kristine. (Plfs. SOF ¶ 606.) Insurance and the Division of Specialized Care for Children (DSCC) paid for the wheelchairs, insurance and DSCC did not pay for the Cruisers. (Plfs. SOF ¶ 605.) Kathy M. paid $2,995.00 for the two sets of Cruisers. (Plfs. SOF ¶ 600.) Kathy M. argues that she should be reimbursed for the Cruisers because her insurance covered the wheelchairs; wheelchairs which are used only at school.

The IDEA requires a district to provide medical services and accommodations for a disabled child when it is necessary for the child to remain in school. *See Cedar Rapids Community School District v. Garret F.*, 526 U.S. 66, 68 (1999). Additionally, the service "must not be necessary in itself and . . . [must be] a special accommodation made necessary only to allow her to attend school or receive education." *Butler v. Evans*, 225 F.3d 887, 894-95 (7th Cir. 2000). Kerry's and Kristine's orthopedist, Dr. Bueche, submitted letters of "medical necessity" to the Illinois Division for Specialized Care for Children ("DSCC"), stating that the wheelchairs were "vital" to Kerry's and Kristine's "optimal function and participation in school, home and community environment." (Defs. SOF ¶¶ 413-17.) This letter indicates that the wheelchairs are not a special accommodation made necessary only to allow them to attend school. The IHO did not err in finding that the wheelchairs were a medical necessity and not the financial responsibility of the school district under the IDEA. Nor do Plaintiffs identify any basis for relief under either the ADA or the Rehabilitative Act. *See,*

*e.g.*, 28 C.F.R. § 35.135 (ADA "does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs [or] individually prescribed devices, such as prescription eyeglasses or hearing aides"). Accordingly, Plaintiffs are not entitled to reimbursement for the purchase of the Convaid Cruisers.

## Conclusion and Order

Wherefore, Defendants' Motions for Summary Judgment [41, 67] are granted and Plaintiffs' Motion for Summary Judgment [51] is denied. Defendants' Motion to Strike [73] and Motion to Strike Certain Portions of Plaintiffs' Response to Defendants' Statement of Facts [95] are granted in part and denied in part consistent with this opinion.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 29, 2006